IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT FENNELL, | No. 4:21-CV-01717 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SECRETARY JOHN E. WETZEL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 1, 2023

Plaintiff Robert Fennell is currently confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill). He filed the instant *pro se* Section 1983[1] action claiming that officials at a different correctional facility violated his constitutional rights with regard to management of the COVID-19 pandemic. Presently pending is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

I.    BACKGROUND

Fennell initially filed suit in September 2021, asserting constitutional torts that allegedly occurred at both SCI Mahanoy and SCI Smithfield and which were

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

purportedly committed by different prison officials at the respective facilities.[2] Those claims and defendants, however, were completely unrelated and thus were inappropriately combined in a single complaint in violation of Federal Rule of Civil Procedure 20(a)(2).[3] Fennell conceded as much, and the Court accordingly severed the two cases.[4]

The instant case—number 4:21-cv-01717—was reserved for Fennell's claims against two SCI Smithfield officials: Superintendent Jamey P. Luther and Officer Harpster.[5] As part of the severance order, the Court required Fennell to file an amended complaint that set forth only his claims concerning the alleged constitutional violations that occurred at SCI Smithfield.[6] Fennell complied, and in his amended complaint named an additional defendant: former Secretary of the Pennsylvania Department of Corrections (DOC) John E. Wetzel.[7]

Fennell's amended complaint concerns alleged events at SCI Smithfield from approximately March 2020 to January 2021. He claims that, in March 2020, Wetzel issued a "statewide lockdown" of all DOC facilities and canceled in-person visitation to prevent the spread of COVID-19.[8] Shortly thereafter, Luther ordered

---

[2] *See generally* Doc. 1.
[3] *See* Doc. 45 at 2 ¶ 1(a).
[4] *See id.* at 2 ¶¶ 1(a), 2.
[5] *See id.* at 2 ¶ 2(a).
[6] *Id.*
[7] *See* Doc. 47 ¶ 2.
[8] *Id.* ¶¶ 7-8.

2

all SCI Smithfield inmates to remain in their assigned housing units.⁹  Fennell additionally alleges that Luther "allowed [SCI] Smithfield employee[]s to enter SCI Smithfield without being vaccinated" and that Harpster assigned employees to different units every day when they reported for work.¹⁰

Fennell avers that, in October 2020, Luther issued a memorandum informing inmates that "A unit" was under quarantine due to an outbreak of COVID-19 caused by a staff member who had infected 85 percent of all A unit inmates.¹¹ Fennell claims that Luther and Harpster then issued an order that required inmates who were 14 days post-infection to be housed on other units with inmates who did not have COVID-19.¹² Fennell further asserts that, on December 22, 2020, Luther ordered Harpster to move all uninfected inmates from Fennell's housing unit to A unit.¹³ Fennell alleges that he and other uninfected inmates were simultaneously sent to the day room of GA unit while COVID-19-infected inmates were placed into GA unit.¹⁴

Early the following morning, Fennell recalls that he was placed in a cell on A unit which had recently housed an infected inmate who had been moved to the hospital "an hour ago."¹⁵  Fennell claims that he repeatedly refused to enter the cell

---

⁹  *Id.* ¶ 9.
¹⁰ *Id.* ¶¶ 10-11.
¹¹ *Id.* ¶ 12.
¹² *Id.* ¶¶ 13-14.
¹³ *Id.* ¶ 15.
¹⁴ *Id.* ¶¶ 16-18.
¹⁵ *Id.* ¶¶ 20-23.

but was warned that if he failed to enter the cell he would be placed in the Restricted Housing Unit (RHU).[16] Fennell ultimately complied, averring that he "was forced to reside within the infected cell for over eight . . . hours" until he was moved to a different cell ("AA-16"), which had also recently housed an infected inmate.[17]

Fennell alleges that on January 25, 2021, he tested positive for COVID-19 during a routine screening.[18] He claims that he was subsequently informed that he had been infected by a corrections officer who had been "forced to conduct a cell inspection of all inmates['] cells," which resulted in the officer spreading COVID-19 "from one cell to another" during the searches.[19]

Fennell asserts three separate Section 1983 counts against Wetzel, Luther, and Harpster,[20] but his claims all sound in deliberate indifference to prisoner health and safety in violation of the Eighth Amendment. He also raises a state-law negligence claim against all Defendants.[21] Defendants move to dismiss Fennell's complaint under Federal Rule of Civil Procedure 12(b)(6).[22] Defendants' motion is fully briefed and ripe for disposition.

---

[16] *Id.* ¶¶ 24-25.
[17] *Id.* ¶¶ 26-27.
[18] *Id.* ¶ 28.
[19] *Id.* ¶ 29.
[20] *See id.* ¶¶ 39-62.
[21] *Id.* ¶¶ 63-68. Fennell additionally includes a fifth count that he describes as "willful and wanton misconduct," *see id.* ¶¶ 69-73, but this is not a cognizable constitutional or state-law tort and the allegations in this count are repetitive of the first four counts.
[22] *See generally* Doc. 48.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[23] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[24] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[25]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[26] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[27] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[28] Finally, the court must review the presumed-truthful allegations

---

[23] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[24] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[25] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[26] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[27] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[28] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[29] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[30]

Because Fennell proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[31]  This is particularly true when the *pro se* litigant, like Fennell, is incarcerated.[32]

## III. DISCUSSION

Before addressing Defendants' Rule 12 arguments, the Court must identify Fennell's claimed constitutional violation or violations.[33]  Fennell asserts that Defendants infringed his "Fifth, Eighth, and Fourteenth Amendment rights," but it is clear that Fennell's Section 1983 claims sound in failure to protect or failure to intervene under the Eighth Amendment.  Fennell's invocation of the Fourteenth Amendment appears to be solely in the context of applying the Eighth Amendment's prohibition of cruel and unusual punishment to Pennsylvania

---

[29] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[30] *Iqbal*, 556 U.S. at 681.
[31] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[32] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[33] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

6

through the Fourteenth Amendment.[34]  And, although Fennell also appears to invoke the due process clause of the Fifth Amendment, he does not explain how this constitutional provision (which concerns the federal government) is implicated in his lawsuit against state prison officials.

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety, the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[35]  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[36]  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[37]

Fennell's Eighth Amendment claims have multiple shortcomings.  The Court will discuss these deficiencies in turn.

---

[34] *See Holland v. Rosen*, 895 F.3d 272, 288 (3d Cir. 2018) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).
[35] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).
[36] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[37] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

## A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[38] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[39] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[40]

Fennell's complaint is deficient as to Wetzel because the allegations therein do not implicate Wetzel's personal involvement in a purported constitutional violation. Fennell's allegations against Wetzel are as follows: (1) Wetzel issued a "statewide lockdown" of all DOC facilities and canceled in-person visitation to prevent the spread of COVID-19[41]; (2) Wetzel "failed to intervene" when he was informed that Luther implemented a rule that "repeatedly mix[ed]" infected inmates with uninfected inmates[42]; (3) Wetzel issued a mandate to all DOC facilities "to cease all inmate movement" and visitation and to have infected inmates quarantine in place[43]; and (4) when Wetzel received grievances

---

[38] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[39] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[40] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[41] Doc. 47 ¶¶ 7-8.
[42] *Id.* ¶ 40.
[43] *Id.* ¶ 48.

"complaining of the repeated cell moves and searches during the COVID-19 pandemic," he "ordered that all cell searches stop due to the risk of staff spreading COVID-19."[44]

None of these allegations implicate an Eighth Amendment failure-to-protect or failure-to-intervene violation by Wetzel. The first, third, and fourth allegations in fact, demonstrate exactly the opposite of deliberate indifference to inmate health and safety, as they show that Wetzel took affirmative action to protect prisoners and DOC staff. As to Fennell's allegation that Wetzel "failed to intervene" when he was informed that Luther was mixing infected and uninfected inmates, this conclusory allegation is insufficient to state a plausible claim for relief against Wetzel.[45] This claim additionally fails because it has no causal connection to Fennell's claimed injury, as will be discussed in more detail below.

Fennell argues that Wetzel's personal involvement is shown because he "minimized and disregarded" Fennell's complaints about the mixing of prisoners and "only conducted a shoddy investigation into some of [Fennell]'s allegations."[46] None of these allegations appear in the amended complaint, and Fennell cannot amend his pleadings through a brief in opposition to a motion to dismiss.[47] Even if

---

[44] *Id.* ¶¶ 57-58.
[45] *See Iqbal*, 556 U.S. at 679.
[46] Doc. 56 at 2.
[47] *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

they were included in the amended pleading, minimizing a prisoner's complaints or "conducting a shoddy investigation" into a prisoner's allegations—while perhaps not reflective of perfect performance—by no means implicates deliberate indifference, which is a stringent standard to meet.

Fennell additionally argues that his allegations show Wetzel's "participation in or actual knowledge and acquiescence in the wrongful conduct,"[48] but this contention is simply incorrect. His allegations against Wetzel—as recited above—show no such thing. In his opposition brief, Fennell also raises a completely undeveloped claim that Wetzel can be held liable under a theory of supervisory liability for his "policies or practices,"[49] but nothing in Fennell's amended complaint would establish the requisite elements for a supervisory liability claim based on an unconstitutional policy or practice implemented by Wetzel. In fact, the policies that Fennell alleges Wetzel implemented were designed to protect inmates' health and safety. Consequently, Fennell's claims against Wetzel are fatally deficient and must be dismissed.

### B. Causation

A more global problem with Fennell's amended complaint is that almost none of the purported unconstitutional conduct he alleges has any connection to his claimed injury—contracting COVID-19 on January 25, 2021. Fennell complains

---

[48] Doc. 56 at 3.
[49] *See id.*

of multiple alleged management lapses by Luther and Harpster in October and December 2020 (like "mixing" infected and uninfected inmates, transferring inmates to different housing units, placing Fennell in cells where the previous inmate was infected, *etc.*), but none of these actions are plausibly related to the injury he claims he suffered. In other words, even if the purported conduct of Luther and Harpster in 2020 somehow violated the Eighth Amendment, Fennell cannot establish causation for his Section 1983 claims.[50]

Fennell avers that he tested positive for COVID-19 on January 25, 2021, and that—as he is a "single cell inmate"—his infection was caused by a corrections officer, who was forced to perform cell inspections, "transmitting COVID-19 from one cell to another."[51] Thus, the only allegation in Fennell's complaint that has any connection to his injury is his claim that Harpster ordered SCI Smithfield staff

---

[50] It is well settled that, for Section 1983 liability to obtain, the purported unconstitutional conduct must proximately cause the alleged injury. *See Martinez v. California*, 444 U.S. 277, 285 (1980) (explaining that, for Section 1983 claims, which are "a species of tort liability," alleged constitutional violation must have "proximately caused" plaintiff's injury); *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) ("It is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." (internal quotation marks and citation omitted)) (collecting cases); *see also Bistrian*, 696 F.3d at 367 (stating that third element of failure-to-protect claim is that deliberate indifference must cause prisoner's harm).

[51] Doc. 47 ¶¶ 28-29. The Court observes that Fennell's COVID-19 infection—which occurred over a month after most of the events alleged in his amended complaint—falls far outside the mean three- to seven-day incubation period following exposure to COVID-19 and its variants. *See* CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/clinical-considerations-presentation.html#:~:text=Incubation%20Period,from%20exposure%20to%20symptom%20onset (last visited Jan. 27, 2023).

to resume cell searches in contravention of guidance issued by Wetzel several months earlier.[52]

### C. Qualified Immunity

Assuming that Fennell's single allegation against Harpster regarding resumption of cell searches satisfies the pleading requirements for an Eighth Amendment claim, the claim must still be dismissed because Harpster is insulated from liability by qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[53] The Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[54]

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing

---

[52] *See* Doc. 47 ¶¶ 58-60. In various places in Fennell's complaint, he asserts that SCI Smithfield correctional officers were not vaccinated against COVID-19 and intimates that this was somehow a policy choice by Luther and Harpster. Fennell apparently overlooks the fact that the FDA did not provide emergency authorization for the first COVID-19 vaccine until mid-December 2020, *see* U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html (last visited Jan. 27, 2022), and that vaccine availability was initially limited to specific high-risk cohorts for several months before the general public had access, *see id.* (noting that it was not until April 19, 2021, that all people 16 years of age and older were eligible for the COVID-19 vaccine).
[53] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[54] *Id.*

violates that right.'"⁵⁵ "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'"⁵⁶ And "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."⁵⁷

Defendants assert that, regardless of the Eighth Amendment right involved in Fennell's allegations of Defendants' handling of COVID-19 in 2020 and early 2021, no right was "clearly established." As explained above, there is only a single right (concerning the resumption of cell searches in prison during the early stages of the COVID-19 pandemic despite DOC guidance to the contrary) that could have any causal connection to Fennell's alleged injury. And the Court agrees with Defendants that such a right was not clearly established at the time the conduct purportedly occurred.

Fennell fails to cite a single Supreme Court or Circuit Court of Appeals case post-dating the start of the COVID-19 pandemic that would demonstrate that his claims involve clearly established rights. In fact, none of the cases he cites deals with the unquestionably novel circumstances created by the COVID-19 pandemic

---

⁵⁵ *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
⁵⁶ *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (quoting *Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017)).
⁵⁷ *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

in prison settings. Furthermore, Fennell's briefing only addresses his allegations of mixing infected and uninfected inmates and being forced to reside in a cell that had previously housed an infected inmate.[58] As explained above, these claims have no causal connection to Fennell's injury and therefore are irrelevant to the qualified immunity analysis. Nor can the Court independently identify a Supreme Court or Third Circuit case or a "robust consensus of cases" from other circuits showing that Harpster violated a clearly established right at the time of his alleged conduct.

This Court is acutely aware of the complexity and unprecedented nature of the COVID-19 pandemic, especially as it relates to prison management. As the United States District Court for the Western District of Virginia aptly reasoned,

> The COVID-19 pandemic was a new and unusual issue, and there was ongoing and changing guidance from health officials at both the state and federal levels. [Prison officials] implemented protocols and policies and procedures to deal with the pandemic, which was a difficult situation for the whole of society and every business, but especially for congregate settings like prisons. Even if some of these policies were insufficient, *and even if they were not always followed*, neither the policies or *occasional lapses* were clearly insufficient to protect prisoners, given the novelty of the virus and the questions—and evolving guidance—as to how to prevent its spread and treat it. . . . "The world's understanding of COVID-19 is constantly evolving, and there is no precedent that would have made it clear to a reasonable official that the measures Defendants took unreasonably responded to the COVID-19 pandemic."[59]

---

[58] *See* Doc. 56 at 9-10.
[59] *Ross v. Russell*, No. 7:20-cv-000774, 2022 WL 767093, at *14 (W.D. Va. Mar. 14, 2022) (emphasis supplied) (quoting *Ryan v. Nagy*, No. 2:20-cv-11528, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021) (report and recommendation)).

As *Ross v. Russell* explains, there simply was no clearly established precedent in 2020 and early 2021 that would have put Harpster on notice that his lapse in enforcing Wetzel's "no cell searching" guidance would violate Fennell's constitutional rights. Because Harpster is entitled to qualified immunity, the Section 1983 claim against him must be dismissed.[60]

### D. State-Law Negligence

Fennell also asserts state-law negligence claims against all Defendants. However, because it is clear from the allegations of the amended complaint that Defendants' actions were performed within the scope of their employment, the negligence claims must be dismissed.

Commonwealth parties acting within the scope of their employment generally are immune from suit except when immunity is explicitly waived.[61] Pennsylvania's General Assembly has carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors.[62] Section 8522(b) of Title 42 of the Pennsylvania Consolidated Statutes provides ten narrow categories[63] where the state has waived its sovereign immunity for claims involving negligent

---

[60] The Court notes that, even if Fennell had plausibly alleged other Eighth Amendment violations against Wetzel or Luther, those claims would likely be barred by qualified immunity as well.
[61] *See* 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521, 8522(a).
[62] *See generally* 42 PA. CONS. STAT. §§ 8521, 8522.
[63] The ten exceptions set forth in 42 PA. CONST. STAT. § 8522(b) concern: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.

conduct by Commonwealth parties.[64]  This state statutory immunity applies to both negligent and intentional torts committed by Commonwealth actors.[65]

None of the ten exceptions in Section 8522(b) apply to the instant claims. Fennell has not identified or argued that any of the exceptions apply, either.  It appears that Fennell's briefing focuses on Eleventh Amendment sovereign immunity, which is not at issue here.  Therefore, because state statutory immunity shields Defendants from state tort claims, Fennell's negligence claims against all Defendants must be dismissed.

## IV.  LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[66]  Here, leave to amend will be denied because amendment would be futile.  First, Fennell fails to plead personal involvement for Wetzel, and none of his allegations—even if amended—could fix that deficiency. That is because his claims against Wetzel concern issues that have no causal connection to Fennell's alleged injury.  Relatedly, Fennell's allegations only implicate causation as to a single Eighth Amendment claim against a single Defendant—Harpster.  And Harpster is shielded from liability on that claim by

---

[64] *See id.* § 8522(a), (b).
[65] *See La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).
[66] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

16

qualified immunity. Finally, Fennell's state-law negligence claims are barred by state statutory sovereign immunity.

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Leave to file a second amended complaint will be denied because amendment would be futile. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge